UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X
JAMES M. JOHNSON,                         :

              Plaintiff,        :
                          AMENDED COMPLAINT
       - against -             :

SCHOLASTIC, INC., ANTHONY WELWOOD,   : No. 05 cv 3526(NRB)(FM)
and THE HARTFORD FINANCIAL SERVICES
GROUP, INC., parent of HARTFORD      :
LIFE GROUP INSURANCE COMPANY,
                         :
           Defendants.
- - - - - - - - - - - - - - - - - - -X

      JAMES M. JOHNSON, Plaintiff, by his attorney Bonnie
P. Josephs, as and for his Amended Complaint against
Defendants, alleges as follows:

### INTRODUCTION

      1.  This is an action arising in part under the
Employee Retirement Income Security Act of 1974, as amended
("ERISA"), 29 USC §1001, et seq., against Defendants
Scholastic, Inc. ("Scholastic") and The Hartford Financial
Services Group, Inc. parent of Hartford Life Group Insurance
Company ("Hartford") for damages for said Defendants' wrongful
failure to pay or provide disability benefits to Plaintiff in
violation of ERISA, to recover unpaid disability benefits due
to Plaintiff under Defendants' employee benefit plan, Policy
Number: 83212487 ("Plan"), to clarify the rights of Plaintiff
to future disability benefits under the Plan, and to recover
attorney fees and costs.

2.    This action also arises in part under the laws of the State of New York for damages and other relief based on the wrongful and negligent acts of Defendants Anthony Welwood ("Welwood") and Scholastic against Plaintiff consisting of intentional and negligent infliction of emotional distress and prima facie tort.

3.    Plaintiff has also filed a claim in the New York City Human Rights Commission ("NYCHRC") against Defendants Welwood and Scholastic for damages arising out of employment discrimination against Plaintiff practiced by Defendants Welwood and Scholastic in the State of New York by reason of Plaintiff's Disability (as defined below), his gender, and his marital status as a widower of a victim of the World Trade Center disaster.   A copy of Plaintiff's discrimination complaint as filed in NYCHRC is annexed hereto and made a part hereof as Exhibit A hereto.

### PROCEDURE

4.    This action was originally filed in Supreme Court of the State of New York, County of New York under Index No. 103041/05, on March 4, 2005.

5.    The Summons and Complaint were duly served on Defendants Scholastic and Welwood on March 14, 2005.

6.    The Summons and Complaint were duly served on Defendant Hartford on March 29, 2005.

7.    On or about April 5, 2005, Defendants Scholastic and Welwood filed a Notice of Removal of the action to the United States District Court for the Southern District of New York.

8.    Defendant Hartford consented to the removal of the action to this Court.

9.    On April 18, 2005, Defendant Hartford served its Answer to the original Complaint herein.

10.   On April 28, 2005, the Court accepted the said Removal of this action over the objection of Plaintiff.

11.   On April 28, 2005, the Court granted Plaintiff the right to file an Amended Complaint.

## JURISDICTION AND VENUE

12.   Jurisdiction is founded on 28 USC §1331, as the action arises, in part, under ERISA.

13.   Venue in the Southern District of New York is appropriate under 28 USC §1391 because Defendant Scholastic has its principal office for the conduct of its business in this judicial district, the acts and omissions alleged herein occurred in this judicial district, and Defendants removed the action to this judicial district with the approval of the Court.

3

## THE PARTIES

14.  Plaintiff is a resident of the State of New Jersey.

15.  Plaintiff was employed by Defendant Scholastic, Inc., at its principal office at 557 Broadway, New York, New York 10012-3999, as Global Telecommunications Manager from on or about May 7, 2001, through in or about April 2004, and thereafter as "Project Manager" of Telecommunications through on or about July 27, 2004.

16.  Defendant Scholastic is a corporation with a principal place of business located at 557 Broadway, New York, NY 10012-3999.

17.  Defendant Hartford is an insurance company doing business in the State of New York, which on information and belief, provides disability insurance coverage under the Plan for the employees of Scholastic, as "Scholastic's disability vendor."

18.  Defendant Welwood, is a resident of the State of New York.

19.  In or about April 2004 Defendant Welwood was hired by Scholastic as Global Telecommunications Director at its principal place of business located at 557 Broadway, New York, NY 10012-3999.

4

20. Defendant Welwood continues to date in the position as Global Telecommunications Director of Scholastic.

## FIRST CAUSE OF ACTION FOR DENIAL
## OF DISABILITY BENEFITS UNDER ERISA

21. The Plan is an employee welfare benefit plan under ERISA.

22. Defendant Scholastic makes the benefits of the Plan available to its employees including Plaintiff.

23. Plaintiff was and is a participant in the Plan under ERISA and entitled to disability benefits under the Plan.

24. In the period from May 2001 through at least in or about 2004 disability claims under the Plan "were processed by CNA Scholastic's insurance administrator" as stated in Defendant Scholastic's 2004 Benefits booklet.

25. Coverage of disability claims under the Plan as of in or about 2004 to date was provided by Defendant Hartford.

26. Plaintiff was and is entitled to coverage for Salary Continuation, Short-Term Disability payments, and Long-Term Disability payments under the Plan as a full-time employee of Scholastic.

27. As of on or about July 27, 2004, Plaintiff was rendered disabled within the meaning of the Plan by reason of

5

post-traumatic stress disorder, depression, and related
psychiatric and psychological disorders (Plaintiff's
"Disability").

28.   On August 6, 2004, Scholastic gave Plaintiff
written notice ("Notice") of his "employee rights under
Scholastic's Short Term Disability Plan."

29.   The Notice provided in relevant part:

> The first five days of your disability leave will be
> paid in accordance with Scholastic's sick time
> policy.  You will then continue to be paid 100% of
> your salary (salary continuation) by Scholastic for
> up to 7 weeks, which is based on your length of
> service....If your disability should continue beyond
> the salary continuation period and you are approved
> for benefits by Hartford, you will receive income
> benefits at 50% of your weekly base salary (paid by
> Hartford) for as long as you meet the qualifications
> of being disabled.

30.   Plaintiff duly and timely made a claim for
disability benefits to Defendants Scholastic and Hartford,
Claim Numaber: 2428636213.

31.   From in or about August 2004 through on or about
September 24, 2004 (the "Period"), Scholastic paid to Plaintiff
100% of his base pay under the Salary Continuation aspect of
the Plan as Plaintiff's Disability met the eligibility
requirements for that benefit and Plaintiff was medically
certified as being disabled.

6

32.  By letter dated October 6, 2004, Defendant Hartford confirmed, in relevant part, that Plaintiff's:

> claim for benefits under the [Plan] has been approved for payment....Based on your policy's elimination period, your benefits commence 08/12/2004.

> Your policy stipulates that Short Term Disability benefits begin after the Elimination period has been met, or after the Employer's Salary Continuation benefits have been exhausted, whichever is later. Based on the information received from your employer, Salary Continuation benefits will be paid through 09/15/2004.

33.  Prior to and after July 27, 2004, during the Period and thereafter, Plaintiff received psychiatric, psychological, and medical treatment for Plaintiff's Disability from health care providers identified and recommended to Plaintiff by Scholastic, and Plaintiff was covered and continues to be covered by health benefits provided by Defendant Scholastic to its employees.

34.  On information and belief, during the Period, Scholastic submitted a claim for Worker's Compensation benefits on behalf of Plaintiff.

35.  On or about September 21, 2004, Plaintiff's attorney informed the attorney for Scholastic that Plaintiff intended to file claims for employment discrimination.

36.  On September 23, 2004, Scholastic informed Plaintiff's attorney that Worker's Compensation insurance coverage for Plaintiff's Disability had been denied.

37.  Plaintiff did not receive any direct report concerning Worker's Compensation insurance coverage.

38.  On September 23, 2004, Scholastic also informed Plaintiff's attorney that Short Term Disability insurance coverage would, if accepted, provide Plaintiff payment of disability payments for 26 weeks retroactive to the last date of payment under the Salary Continuation benefit of the Plan.

39.  Plaintiff submitted updated information concerning his Disability from his health care providers as requested by Defendants Hartford and Scholastic.

40.  As shown herein, Defendants Scholastic and Hartford refused to afford Plaintiff the disability benefits provided under the Plan for his Disability notwithstanding that he met the eligibility requirements for that benefit and notwithstanding that he was certified as being disabled.

41.  On December 10, 2004, Defendant Hartford requested additional "supporting medical data" from Plaintiff's health care providers, notwithstanding that the health care treatment being provided to Plaintiff for his Disability

8

consisted solely of psychotherapy in the form of talk therapy and that complete data as to the therapy had been provided.

42. On January 13, 2005, Plaintiff's attorney corresponded with Defendants Hartford and Scholastic providing all of the existing health care data for Plaintiff's Disability and an explanation of Plaintiff's Disability, stating that "medical data" other than as to psychological treatment for his Disability did not exist and could not exist.

43. Plaintiff's treating psychotherapist, a professional who had been identified and recommended to Plaintiff by Defendant Scholastic, determined that Plaintiff was totally disabled by his psychological condition and documentation of such determination was provided to Defendants Scholastic and Hartford.

44. On February 1, 2005, Defendant Hartford denied further benefits to Plaintiff again because of the stated absence of "supporting medical data" and asked, again, for the submission of such "supporting medical data" which data, as known to Defendant Hartford, do not and cannot exist to establish a purely psychological disability such as Plaintiff's Disability.

45. Defendants Scholastic and Hartford did not attempt to conduct any examination of Plaintiff of their own to verify the demonstration of Plaintiff's Disability by his

health care providers and Defendants Scholastic and Hartford disregarded the substantial evidence of Plaintiff's Disability that was submitted by Plaintiff's health care providers.

46.  At no time did either Hartford or Scholastic assert that Plaintiff was not disabled within the meaning of the Plan.

47.  The denial of disability benefits to Plaintiff by Defendants Scholastic and Hartford was made after Plaintiff's attorney had informed the attorney for Defendant Scholastic that Plaintiff intended to file an employment discrimination complaint against Defendant Scholastic.

48.  Plaintiff complied with all requirements applicable to him under the Plan.

49.  The denial of disability benefits to Plaintiff by Defendants Scholastic and Hartford was not rational, or supported by any documentation or finding, and was not made in good faith and amounts to a breach of said Defendants' fiduciary duty to Plaintiff under the Plan and ERISA.

50.  Defendant Scholastic breached its fiduciary duty to Plaintiff in failing properly to monitor and review the actions of Hartford in failing to correct the unsupported denial of Plaintiff's claim for disability benefits under the Plan.

10

51. Plaintiff remains disabled by reason of his Disability.

52. Plaintiff is entitled under ERISA to a _de novo_ review of the denial of his disability benefits under the Plan.

53. Upon such review Plaintiff is entitled to an award of disability benefits under the Plan which Defendants Scholastic and Hartford denied him and to continued benefits under the Plan.

54. Plaintiff is entitled under ERISA to an award of counsel fees and disbursements and costs incurred by Plaintiff in this action.

### ORIGIN OF PLAINTIFF'S DISABILITY

55. Plaintiff's Disability arose initially as a result of the death of Plaintiff's wife Lisa King Johnson ("Lisa") on September 11, 2001, in the World Trade Center disaster.

56. Plaintiff had been married to Lisa on May 19, 2001.

57. Lisa had been employed by Scholastic for twelve years through August 1999.

11

58.   Thereafter, Lisa was employed by Keefe Bruyette & Woods, at the World Trade Center, New York, New York, until her untimely death on September 11, 2001.

59.   At the time of Lisa's death she was pregnant with the unborn child of Plaintiff and Lisa.

60.   From September 12, 2001, to on or about September 15, 2001, Plaintiff in the company of police officers, searched the site of the World Trade Center ruins and other locations for human remains.

61.   A portion of the remains of Lisa was found on the perimeter of the disaster site on September 14, 2001.

62.   Other physical remains of Lisa and some of her personal property were found on subsequent occasions, through in or about 2004.

63.   Plaintiff had to undergo successive funerals for Lisa.

64.   As a result of Lisa's death, Plaintiff lost his close relationship with Lisa's children from Lisa's prior marriage who had lived with them.

65.   In November 2001, Plaintiff was present in Queens, New York, only doors away from the crash of an airliner bound for the Dominican Republic.

12

66.   In late 2001, Plaintiff's mother was diagnosed with pancreatic cancer.

67.   In March 2002, Plaintiff suffered serious injuries to his left leg in an automobile accident.

68.   As a result of the foregoing events, Plaintiff suffered acute and prolonged, severe psychological and physical trauma for which he received intensive medical and psychological treatment, including treatment with psychoactive drugs, both in hospital and as an outpatient and Plaintiff is still receiving psychological outpatient treatment in the nature of talk therapy only.

69.   Scholastic initially provided health insurance and other benefits and accommodations under the Plan and otherwise as a consequence of the foregoing events and the effect on Plaintiff.

70.   Scholastic and its executives and employees were and are well aware of Plaintiff's physical and psychic trauma and treatment.

71.   As of in or about January 2002 Plaintiff returned to work full-time at Scholastic.

72.   Thereafter, Plaintiff devoted his full time and attention to his work for Scholastic in spite of his trauma.

13

73.   The work acted as a distraction for Plaintiff from his trauma and Plaintiff earned the praise of executives and employees of Scholastic for whom and with whom he worked.

74.   Until July 2004 Plaintiff succeeded in his work for Scholastic by, among other things, halving the cost to Scholastic for its telecommunications activity and by promoting the integration of various units of Scholastic in widespread areas of the United States, the United Kingdom, and Europe.

75.   Plaintiff developed strong personal relations with his immediate superiors at Scholastic, among them Gregory Donato and Larry Holland.

76.   All personnel at Scholastic were aware that Plaintiff's trauma would be exacerbated and revived by reminding Plaintiff of the events surrounding the World Trade Center disaster and the death of Lisa.

77.   It was generally known at Scholastic that Plaintiff was entitled to an award of restitution from the 9/11 Fund of the United States federal government, that Plaintiff had made such application, on or about May 9, 2002, and that on or about May 15, 2004, Plaintiff received the said award.

78.   In April 2004 Defendant Scholastic hired Defendant Welwood as Telecommunications Director without offering the position to Plaintiff.

14

79.   From the outset of his employment by Scholastic through July 27, 2004, Defendant Welwood conducted a relentless campaign to force Plaintiff out of his employment at Scholastic because of Plaintiff's trauma and his status as a widower of a World Trade Center disaster victim.

80.   In pursuance of said campaign, Defendant Welwood, on behalf of senior management of Defendant Scholastic, continuously, persistently, negligently, and intentionally subjected Plaintiff to harassment and a hostile work environment and discrimination which directly caused intolerable exacerbation of Plaintiff's trauma and led to Plaintiff's Disability.

81.   Among the wrongful acts of Defendants Scholastic and Welwood:

a.   Defendants did not offer to Plaintiff the promotion to "Global Telecommunications Director" the position given to Welwood;

b.   Defendants reduced Plaintiff's job title to "Project Manager;"

c.   Defendants reduced Plaintiff's responsibilities and duties;

d.   Defendants directed to Welwood all employees who formerly reported to Plaintiff;

e.   Defendants excluded Plaintiff from meetings and decisions;

15

f.     Defendants deprived Plaintiff of his former office;

g.     Defendant Welwood stated to Plaintiff in the hearing of other employees, and directly to other employees, that as Plaintiff was a widower whose wife had died in the World Trade Center disaster and who was entitled to restitution from the 9/11 Fund:

(1)  that Plaintiff no longer needed his job at Scholastic because he "would be taken care of" referring to the 9/11 Fund award;

(2)  that  Plaintiff  would  soon  be "retiring;"

(3)  that Plaintiff was "not on the bus;"

(4)  that  the  award  Plaintiff  would receive from the 9/11 Fund would make Plaintiff's job at Scholastic unnecessary to him;

(5)  that it was strange that Plaintiff was still working at Scholastic because of his trauma and status;

(6)  that "changes" would be made and "people would not be here any more," meaning Plaintiff;

(7)  that Plaintiff should "quit his job and become a consultant" and make his own hours;

(8)  that the 9/11 Fund award made Plaintiff's job unnecessary for Plaintiff; and

16

h.    Defendant Welwood cruelly and persistently provoked Plaintiff to re-live and re-experience his acute and prolonged psychological injury and suffering due to Lisa's death in the World Trade Center disaster and the aftermath by taunting Plaintiff about the tragic death of Lisa, and relentlessly reminding Plaintiff that Lisa's death could have been avoided if the Government had not made errors as revealed in the 9/11 Commission Report and otherwise, even after Plaintiff pleaded with him to stop, all the time knowing that such statements were cruel, and that they would exacerbate Plaintiff's trauma and acute psychological distress and related symptoms and Welwood made the statements with the intent to hurt Plaintiff or with negligent disregard of the harmful effect on Plaintiff and to force Plaintiff out of his job for Scholastic and to cause Plaintiff increased pain and suffering.

82.    Defendant Scholastic was well aware of and condoned the aforesaid misconduct of Defendant Welwood who admitted his actions to senior management, as well as to a Human Resources Manager of Scholastic; and Defendant Scholastic did not take any steps to correct Welwood's misconduct toward Plaintiff.

83.    Defendant Scholastic was well aware of Plaintiff's application for and receipt of the 9/11 Fund award,

17

as  Defendant  Scholastic  assisted  Plaintiff  in  making  the
application.

84.   On  July  27,  2004,  Plaintiff  was  compelled  to
leave his employment with Defendant Scholastic by reason of the
foregoing  persistent  harassment  and  hostile  work  environment
and  discrimination  as  to  his  marital  status  as  a  widower  of  a
9/11  victim  entitled  to  the  9/11  award  and  by  reason  of  the
purposeful  and  negligent  exacerbation  of  his  psychological
trauma  that  was  caused  thereby.

85.   The  foregoing  statements  show  that  Defendants
Scholastic  and  Welwood  maliciously  embarked  on  a  course  of
conduct  intended  to  cause  Plaintiff  to  suffer  mental  and
emotional  distress,  tension,  and  anxiety  and  exacerbation  and
prolongation  of  his  psychological  trauma  previously  known  to
them  and  to  cause  him  to  be  driven  from  his  employment  at
Scholastic and to cause him to suffer short-term, and long term
Disability  as  a  result  thereof.

### SECOND CAUSE OF ACTION FOR INTENTIONAL OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AND PRIMA FACIE TORT

86.   Plaintiff  repeats  and  realleges  the  statements
contained in paragraphs 1 - 84 of this Complaint.

87.   The  said  reckless  and  wrongful  acts  of
Defendants  Scholastic  and  Welwood  constituted  extreme  or
outrageous conduct which transcends the bounds of decency and

18

which caused Plaintiff to suffer severe mental and emotional distress as shown in this Complaint.

88.   As a result of Defendants' actions,

a.   Plaintiff is disabled from employment;

b.   Plaintiff has suffered and will continue to sufer mental, emotional, and psychological strain, and the loss of enjoyment of life;

c.   Plaintiff was and is placed under undue strains and burdens and was and is forced to undergo humiliation and public embarassment, as a result of Defendants' wrongful conduct;

89.   Consequently Plaintiff has been damaged in the amount of $100,000,000.

### PLAINTIFF'S DISCRIMINATION COMPLAINT

90.   Plaintiff has filed a Complaint against Defendants Scholastic and Welwood with the New York City Commission on Human Rights (hereafter "Plaintiff's Discrimination Complaint"), a copy of which is annexed to and made a part hereof as Exhibit A.

91.   The allegations in said Complaint are incorporated herein by reference.

92.   Upon issuance of a right-to-sue letter or other process permitting Plaintiff to sue said Defendants in court

19

upon said claims of employment discrimination, Plaintiff will amend this Complaint to assert said claims in this action.

WHEREFORE, Plaintiff is entitled to judgment as follows:

A.   On the First Cause of Action a judgment against Defendants Scholastic and Hartford jointly and severally in the total amount of the disability insurance coverage that they were and are required to provide to Plaintiff, together with Plaintiff's counsel fees and disbursements incurred in this action;

B.   On the Second Cause of Action a judgment against Scholastic and Welwood, jointly and severally, in the amount of $100,000,000;

C.   On all Causes of Action, such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         May 13, 2005

Yours, _etc._,

BONNIE P. JOSEPHS (BJ-5536)
Attorney for Plaintiff
1776 Broadway, 21st Floor
New York, NY 10019
(212) 644-5712

20

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -X
JAMES M. JOHNSON,                       :

                    Plaintiff,          :
                                              AFFIDAVIT OF SERVICE
          - against -                   :

SCHOLASTIC, INC., ANTHONY WELWOOD,      : No. 05 cv 3526(NRB)(FM)
and THE HARTFORD FINANCIAL SERVICES
GROUP, INC., parent of HARTFORD         :
LIFE GROUP INSURANCE COMPANY,
                                        :

                    Defendants.
- - - - - - - - - - - - - - - - - - - -X

STATE OF NEW YORK   )
                    : SS:
COUNTY OF NEW YORK  )

        BONNIE P. JOSEPHS, being duly sworn, deposes and says:

        I am attorney for Plaintiff in the above-entitled

action.  On May 13, 2005, I caused to be served by messenger a

true copy of Plaintiff's Amended Complaint on the following

attorneys for Defendants herein at the addresses stated below:

                    NEIL H. ABRAMSON, ESQ.
                    Ptroskauer Rose LLP
                    Attorneys for Defendant SCHOLASTIC INC. +
                    1585 Broadway                    WELWOOD
                    New York, New York 10036-8299

                    CHRISTOPHER S. ROONEY, ESQ.
                    Casey Mahon & Rooney
                    Attorneys for Defendant THE HARTFORD
                    FINANCIAL SERVICES GROUP, INC.
                    450 Seventh Avenue, 21st Floor
                    New York, New York 10123

                                    _____
                                        Bonnie P. Josephs

Sworn to before me on
May 13, 2005
_____
    Notary Public

        FRED C. ROSENBERG
    NOTARY PUBLIC, State of New York
          No. 31-4811105
      Qualified in New York County
    Commission Expires Nov. 30, 2000